IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LORENZO DEMOND KYLES,

                OPINION AND ORDER

       Plaintiff,

                17-cv-188-bbc

  v.

LEHANAHA KRIZAN, RENEE ANDERSON,
REED STUVE and JUDY BENTLEY,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Lorenzo Kyles, who is incarcerated at the Stanley Correctional Institution in Stanley, Wisconsin, is proceeding on claims that prison medical and corrections staff violated his rights under the Eighth Amendment by failing to provide him with adequate medical care for his thumb injury. Before the court are the parties' cross motions for summary judgment. Dkt. ##29 and 38.

      There is some confusion about the scope of the claims on which plaintiff is proceeding. In an order entered on June 28, 2017, I screened plaintiff's original complaint and granted him leave to proceed on an Eighth Amendment claim against defendants Lehanaha Krizan, Renee Anderson, Reed Stuve and a Jane Doe defendant. Dkt. #10. I dismissed plaintiff's proposed claims against defendants Jamie Barker and Captain Brad Lundmark because plaintiff failed to allege that either defendant had any personal involvement in denying him medical care other than failing to respond to plaintiff's informal

1

grievances about the conduct of other defendants.  Id. at 10-11.  On August 11, 2017, plaintiff filed a proposed amended complaint adding allegations that: (1) Judy Bentley failed to place an order for his post-surgery physical therapy to begin immediately, causing a 33-day delay in treatment; (2) Barker and Lundmark denied plaintiff's grievances complaining about the delay in his post-surgery physical therapy; and (3) the actions of nurse defendants Krizan, Anderson, Bentley and Barker amounted to negligence under state law.  Dkt. #17.  On September 5, 2017, the magistrate judge entered a text only order granting plaintiff leave to amend his complaint.  Dkt. #19.  However, because I never screened the first amended complaint, plaintiff was not granted leave to proceed on his new claims.  On October 2, 2017, plaintiff filed a second amended complaint clarifying that defendant Anderson was the Jane Doe defendant with respect to certain conduct previously alleged in the original complaint.  Dkt. #23.

On February 2, 2018, plaintiff filed an early motion for summary judgment with respect to the claims on which he was granted leave to proceed and the additional claims proposed in his first amended complaint.  Dkt. #29.  Briefing on that motion was extended by several months to coincide with the deadline in the pretrial conference order for filing dispositive motions.  On May 18, 2018, defendants Krizan, Anderson, Stuve and Bentley filed a motion for summary judgment limited to the claims on which plaintiff had been allowed to proceed and the Eighth Amendment claim against defendant Bentley.  They ask that they be allowed to amend their briefing if plaintiff is allowed to proceed on his other proposed claims.  Dkt. #38.

2

For the reasons explained below, I am granting defendants' motion for summary judgment and denying plaintiff's motion for summary judgment with respect to the Eighth Amendment claims against defendants Krizan, Anderson and Stuve. Plaintiff will be denied leave to proceed on the new claims that he included in his first amended complaint because it is clear from the evidence presented by plaintiff that those claims would fail as a matter of law.

Turning to the undisputed facts, two preliminary matters deserve attention. First, defendants object to most of plaintiff's proposed findings of fact on the general ground that the "cited evidentiary material is not properly authenticated and is inadmissible under Fed. R. Evid. 901. Specifically, Plaintiff did not even file a copy of the discovery he purportedly cites." However, for the most part, plaintiff cites his first amended complaint, which is sworn and signed, and medical records, grievance documents and prison policies that he received during discovery and attached as exhibits to the first amended complaint. First amd. cpt., dkt. #17. Plaintiff also attached a few exhibits to the declaration he submitted with his combined brief in response to defendants' motion for summary judgment and in reply to his own motion, dkt. #53, and defendants had an opportunity to review and respond to that evidence before submitting their reply. Therefore, without a more specific objection as to why a particular document would not be admissible at trial, defendants' general objection regarding authenticity will be denied.

Second, plaintiff avers that various health care providers made statements to him about how he should have been treated and whether his past treatment was appropriate and

effective, but these statements are not reflected in the medical record. Such out-of-court statements are generally considered "hearsay," and plaintiff may not offer them as evidence that a claim is true or that an event occurred. Fed. R. Evid. 801. However, any statements made to plaintiff by the defendants in this case are not hearsay and may be offered as evidence. Fed. R. Civ. P. 801(d)(2) (opposing party's statement not hearsay). As discussed further below, I have not considered any fact proposed by plaintiff that relies solely on a hearsay statement.

From the parties' proposed findings of fact, I find the following facts to be undisputed unless otherwise noted.

## UNDISPUTED FACTS

### A. The Parties

Plaintiff Lorenzo Kyles is incarcerated at Stanley Correctional Institution where defendants are all employed. Defendants Lehanaha Krizan and Renee Anderson are registered nurses, defendant Judy Bentley is a nurse practitioner and defendant Reed Stuve is a correctional officer. Proposed defendant Jamie Barker is a registered nurse and the manager of the health service unit, and proposed defendant Brad Lundmark is a supervisory correctional officer and the health services unit liason.

### B. Plaintiff's Injury and Initial Examinations by Krizan and Anderson

On June 7, 2016, plaintiff injured his left thumb on his dominant hand while playing basketball. His thumb swelled so badly that his roommate had to help him with daily activities. Plaintiff cared for the injury himself by icing it, taking ibuprofen and wrapping it in an ace bandage. Because his thumb did not improve by June 20, plaintiff submitted a health services request asking to be seen for a possible fracture, noting that his joint was swollen and he had difficulty bending his thumb.

Plaintiff saw defendant Krizan on June 22, 2016. (Plaintiff says that defendant Anderson was present, but Anderson denies being at the appointment.) Plaintiff described his injury and self-care and reported having a weak grip, relying on his roommate for assistance and being in constant, aching pain that kept him from sleeping. Krizan noted in her progress note that plaintiff's thumb was slightly swollen and painful to the touch but not bruised, and that plaintiff was able to move his thumb. Krizan diagnosed plaintiff with "alteration in comfort," meaning that he was not comfortable and experiencing pain. According to Krizan, the diagnosis is approved by the North American Nursing Diagnosis Association. She told plaintiff that his thumb was sprained and not fractured because he could move it and that it needed at least two months to heal. For treatment, Krizan instructed plaintiff to use ice, gave him ibuprofen and an ace bandage and wrapped his hand with the ace bandage to stabilize his thumb. She chose this treatment because there was no obvious deformity in plaintiff's thumb and he did not display any of the listed symptoms that warranted an emergent consult with an advanced care provider as outlined in the "nursing musculoskeletal protocol." (The parties do not explain what the protocol is or who

5

prepared it but defendants apparently produced the document during discovery and plaintiff attached a copy of it to an affidavit he submitted in support of his summary judgment reply brief. Dkt. #53, exh. #1. The protocols state in relevant part that an advanced care practitioner should be called if there is evidence of deformity, compound fracture, severe disabling pain, loss of sensation or circulation, joint instability or recurrent pain.) Because it was plaintiff's first health service request complaining about his thumb, Krizan determined that plaintiff should try her recommended treatment before seeing an advanced care provider. (Plaintiff says he asked to see a doctor and Krizan told him one was not available, but Krizan denies that plaintiff asked for a doctor.)

Plaintiff did not submit another health service request until August 16, 2016, and the health services unit received it on August 17, 2016. (Krizan says she had told plaintiff to file another health services request if his symptoms did not improve, but plaintiff denies that Krizan told him this.) On August 18, 2016, plaintiff saw defendant Anderson and reported ongoing thumb pain, a lack of ibuprofen and that his left thumb looked different from his right. Plaintiff reported difficulty with his grip, asked to see a doctor and requested x-rays. Anderson noted that plaintiff had no obvious swelling or deformity in his left thumb and that he had full flexion. She assessed plaintiff with muscouskeletal discomfort, which means he was having pain, and referred him to an advanced care provider. (Plaintiff says that he asked Anderson for more pain medication but she refused to provide it because she was irritated with him for continuously requesting to see a doctor. Anderson denies that plaintiff asked her for more pain medication.) Anderson does not have the authority to provide

6

prescription pain medication and knew that plaintiff could access ibuprofen through the canteen. (Defendants present evidence that plaintiff had the resources to make purchases through the canteen in August and September 2016. Plaintiff says that he was not able to purchase ibuprofen because of "the way canteen orders work," but he does not explain what this means. Dkt. #53, ¶ 7.)

### C. Plaintiff's Physician Visits and Surgery

On August 31, 2016, plaintiff saw Dr. Hannula who noted no visible deformities, no swelling, normal strength and minimal tenderness around the metacarpophalangeal joint in plaintiff's thumb. She gave him ibuprofen and ordered x-rays, which showed no fracture but soft tissue swelling and slight subluxation at the joint. On September 7, Dr. Hannula told plaintiff that the subluxation was causing his pain and referred him to a hand surgeon.

On September 9, 2016, plaintiff saw Dr. Edward Hayes, an orthopedic specialist at Marshfield Clinic, who noted an "obvious deformity" in plaintiff's thumb that deviated in an ulnar direction at the metacarpophalangeal joint and significant laxity of plaintiff's radial collateral ligament. (Plaintiff avers that Dr. Hayes asked him at this appointment whether he was given a splint and told him that "you needed surgery in June to repair the ligaments." However, this statement is inadmissible hearsay because it is a statement made by a third party that plaintiff offers for the truth of the matter asserted. Fed. R. Evid. 801.)

On September 14, plaintiff underwent surgery to reconstruct the ligament in his left thumb. Dr. Hayes gave plaintiff a sling and his discharge instructions recommended Vicodin

7

every four to six hours for pain, finger exercises every one to two hours while awake, a follow up appointment in 10-12 days and a December 5, 2016 appointment with a physician assistant and physical therapist at Marshfield Clinic. Dkt. #42, exh. #1 at 35 (discharge order). On September 15, 2016, Dr. Hannula prescribed plaintiff Vicodin every six hours as needed.

D. Defendant Stuve's Distribution of Post-Surgery Pain Medication

At 7 a.m. on September 16, 2016, defendant Stuve gave plaintiff two Vicodin tablets per Dr. Hannula's orders. However, when plaintiff returned for more medication at the noon medication call, Stuve told plaintiff that he was too early and to come back after count cleared. Stuve refused to give plaintiff any pain medication even though plaintiff told Stuve that he was in a lot of pain following a surgery. (Plaintiff says he asked Stuve if he could see a nurse, while Stuve denies that plaintiff asked to see a nurse.) Plaintiff had over-the-counter pain medication available to him and took it after he returned to his cell to wait for his next dose of Vicodin. When plaintiff returned to the health services unit after the count cleared at 1 p.m., Stuve told plaintiff that he could get his medication at that time because the physician order stated that it was due every six hours.

On September 21, plaintiff told defendant Krizan about being denied pain medication and she consulted Dr. Hannula, who modified his prescription to allow him Vicodin every four hours. (Plaintiff says that Krizan told him that Stuve should have alerted medical staff before turning him away in pain, but Krizan denies saying this.)

8

E. Physical Therapy

On December 5, 2016, plaintiff saw Alexis Berg, a physician assistant, and Sara Meyer, a physical therapist, at the Marshfield Clinic. Meyer fitted plaintiff with a splint, explained that plaintiff would be working with a physical therapist at the prison and scheduled another follow up appointment with Dr. Hayes. Specifically, her notes state that plaintiff should do range of motion exercises three times a day and "follow up" with physical therapy to improve his range of motion. Dkt. #17, exh. #2 at 44. When plaintiff returned to the prison, he saw Krizan, who discussed the physical therapy recommendation, told plaintiff it would start in the next two weeks and flagged his file for the doctor. That same day, defendant Bentley noted these recommendations in plaintiff's chart, writing "PT for finger exercises @ SCI." Id. at 46. On December 13, 2016, plaintiff wrote to proposed defendants Barker and Lundmark, asking them to intervene because he had not yet received physical therapy. He also filed a grievance to this effect on December 16, 2016.

At plaintiff's last follow up appointment on December 22, 2016, Dr. Hayes noted that the range of motion in plaintiff's left thumb was 30 degrees and was only 40 to 45 degrees in his uninjured right thumb, which Dr. Hayes interpreted as an excellent surgical outcome. (Plaintiff avers that Dr. Hayes asked whether the physical therapy was helping plaintiff's range of motion and told plaintiff that he would call in the referral again. However, these statements are inadmissible hearsay by a non-party under Fed. R. Evid. 801.) It is Dr. Hayes's opinion that even if he had seen plaintiff at the time of his thumb injury

in June 2016, he would have recommended the same surgical treatment. In addition, it is Hayes's opinion that waiting until September 9, 2016 to examine plaintiff and September 14 to perform the surgery did not affect the outcome of the surgical procedure or cause plaintiff any further injury or permanent disfigurement. According to Hayes, although plaintiff has some limitation in his range of motion following the surgery, such a limitation is expected anytime surgery is performed to repair a joint.

When plaintiff returned to the prison on December 22, 2016, he told a nurse that he was concerned about not starting physical therapy, and she noted in plaintiff's chart that she spoke with a physician and moved plaintiff's appointment to the following week. Plaintiff began physical therapy with Jered Kuehn on January 7, 2017. According to Kuehn, it was not necessary for Bentley to order physical therapy on an urgent basis because plaintiff had been instructed to perform exercises that were appropriate for him to perform on his own. In Kuehn's opinion, waiting 33 days for physical therapy was appropriate and not a delay because following plaintiff's type of injury and surgery, Kuehn would have plaintiff start physical therapy within 6 weeks (or 42 days) of surgery if there was stiffness and home exercises were ineffective. It is also Kuehn's opinion that it was plaintiff's failure to perform his exercises effectively and not the 33 day waiting period that caused the stiffness that he experienced, but his stiffness was temporary and resolved through physical therapy. (Although plaintiff avers that Kuehn told him that he should have been provided with a splint at the time of his injury and that he should have received physical therapy in December 2016 for a better result, those statements are inadmissible hearsay by a non-party

10

under Fed. R. Evid. 801.) By plaintiff's fourth and final physical therapy appointment on January 26, 2017, plaintiff had restored 90 percent of his range of motion, he no longer had functional limitation in his thumb and he had improved his ability to move his thumb, finger and wrist in all planes. Plaintiff started playing basketball again in September 2017.

OPINION

Plaintiff was allowed to proceed on the following claims of inadequate medical care under the Eighth Amendment: (1) defendants Krizan and Anderson (previously identified as a Jane Doe defendant) failed to take reasonable measures to treat plaintiff's thumb injury or refer him to a doctor, which caused his thumb not to heal properly; (2) defendant Anderson refused to give plaintiff ibuprofen for his pain until he saw a doctor two weeks later, even though she knew that plaintiff had been given ibuprofen previously; and (3) defendant Stuve failed to contact medical staff when plaintiff told him he was in significant pain from a recent surgery and needed his pain medication. In addition, plaintiff seeks to bring the following additional claims in his firs amended complaint: (1) defendant Bentley failed to place an order for plaintiff's post-surgery physical therapy to begin immediately, causing a 33-day delay in treatment; (2) defendants Barker and Lundmark denied plaintiff's grievances complaining about the delay in his post-surgery physical therapy; and (3) the actions of nurse defendants Krizan, Anderson, Bentley and Barker amounted to negligence under state law.

A. Legal Standards

1. Eighth Amendment

To prevail on a claim under the Eighth Amendment, a prisoner must show that the defendant was "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006). The condition does not have to be life threatening. Id. A medical need may be serious if it "significantly affects an individual's daily activities," Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997), if it causes significant pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825 (1994). "Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by failing to take reasonable measures. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997). Delay in treatment may constitute deliberate indifference if the delay unnecessarily prolongs the prisoner's pain. Smith v. Knox County Jail, 666 F.3d 1037, 1040 (7th Cir. 2012). However, the Court of Appeals for the Seventh Circuit has recognized that delays are "common in the prison setting with limited resources," and stated that "whether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment." Petties v. Carter, 836 F.3d 722, 730 (7th Cir. 2016).

Further, § 1983 limits liability to public employees who are personally responsible for a constitutional violation. Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009). To

be liable, an individual defendant must have caused or participated in a constitutional violation. Hildebrandt v. Illinois Department of Natural Resources, 347 F.3d 1014, 1039 (7th Cir. 2003).

2. State negligence law

To prevail on a claim for negligence in Wisconsin, a plaintiff must prove that the defendants breached their duty of care and plaintiff suffered injury as a result. Paul v. Skemp, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 520, 625 N.W.2d 860, 865. See also Gill v. Reed, 381 F.3d 649, 658-59 (7th Cir. 2004). Wisconsin law defines medical negligence as "the failure of a medical professional to 'exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances.'" Williams v. Thorpe, 2011 WL 4076085, *7 (E.D. Wis. 2011) (citing Sawyer v. Midelfort, 227 Wis. 2d 124, 149, 595 N.W.2d 423 (1999)). To establish a prima facie claim for medical negligence, a plaintiff must show that the provider failed to use the required degree of skill exercised by a reasonable provider, that he was harmed, and that there is a causal connection between the provider's failure and his harm. Id. Expert testimony is required to establish the standard of care, unless "the situation is one in which common knowledge affords a basis for finding negligence." Sheahan v. Suliene, 2014 WL 1233700, at *9 (W.D. Wis. 2014).

B. Deliberate Indifference and Negligence Claims against Krizan and Anderson

13

1. June 22, 2016 treatment

Plaintiff alleges that even though he told defendants Krizan and Anderson on June 22, 2016 that his thumb had not improved after he had iced it, taken ibuprofen and wrapped it in an ace bandage for about two weeks, neither defendant referred him to a doctor and only continued ineffective treatment with ice, ibuprofen and an ace bandage. The parties dispute whether Anderson was present at this appointment, but that dispute is immaterial because plaintiff has submitted no evidence that Krizan's and Anderson's failure to do more at the June 22 appointment amounted to deliberate indifference or even negligence.

Plaintiff argues that Krizan and Anderson should have known that he needed a doctor, but it is undisputed that plaintiff's thumb was slightly swollen and painful to the touch but not bruised, and that plaintiff was able to move his thumb. Krizan's diagnosis was that plaintiff had an "alteration in comfort." She did not believe that his thumb was fractured because he could move it. Because there was no obvious deformity in plaintiff's thumb and he did not display any of the listed symptoms that warranted an "emergent consult" with an advanced care provider as outlined in the "nursing musculoskeletal protocol," Krizan (and allegedly Anderson) instructed plaintiff to use ice, gave him ibuprofen and an ace bandage and wrapped his hand with the ace bandage to stabilize his thumb. In addition, it was plaintiff's first health service request complaining about his thumb and plaintiff had waited almost two weeks to seek medical attention. No reasonable jury could conclude from these undisputed facts that Krizan or Anderson acted with deliberate

14

indifference or negligence in failing to contact a doctor at this appointment. Krizan reasonably determined that plaintiff should try her recommended treatment before seeing an advanced care provider, and when plaintiff presented with continuing symptoms two months later, defendant Anderson referred him to a physician.

2. August 18, 2016 appointment

Plaintiff contends that even though he had submitted a health services request on August 16, 2018, complaining that he did not have ibuprofen, and that he told Anderson on August 18, 2016 that he did not have any pain medication, Anderson refused to give him more ibuprofen until he saw the doctor two weeks later because she was irritated with him for insisting to see a doctor. Anderson denies that plaintiff asked her for ibuprofen or told her that he did not have any. However, even if what plaintiff says is true, no reasonable jury could conclude that Anderson acted with deliberate indifference or negligence. It is undisputed that Anderson knew that inmates had access to ibuprofen through the canteen if necessary. Although plaintiff avers without explanation that he was unable to purchase ibuprofen or any other pain reliever from the canteen, there is no evidence that Anderson knew this.

3. Conclusion

In sum, because no reasonable jury could find that defendants Krizan and Anderson acted with deliberate indifference, they are entitled to summary judgment with respect to

plaintiff's Eighth Amendment claim against them. In addition, because plaintiff has not shown that either defendant failed to use the required degree of skill exercised by a reasonable provider, he will be denied leave to proceed on state negligence law claims against these defendants.

### C. Deliberate Indifference Claim against Stuve

Plaintiff alleges that defendant Stuve made him wait two hours for prescription pain medication without consulting with or referring plaintiff to medical staff. However, plaintiff has failed to show that Stuve acted with deliberate indifference. At the time plaintiff was asking for his pain medication, Dr. Hannula had prescribed Vicodin every six hours. Therefore, Stuve was following Dr. Hannula's orders in refusing to give plaintiff his Vicodin an hour early at the noon medication call. Although plaintiff contends that Stuve should have contacted medical staff after plaintiff told him that he was in a lot of pain following a surgery, Stuve knew that plaintiff was being treated by medical staff for his condition, was able to contact health services staff if needed and would have access to his pain medication within about an hour, after the count had cleared. In light of these facts, no reasonable jury would find that Stuve acted with deliberate indifference to plaintiff's serious medical need. Accordingly, Stuve is entitled to summary judgment with respect to this claim.

### D. Proposed Claims against Bentley, Barker and Lundmark

Plaintiff contends that defendant Bentley acted with deliberate indifference and negligence in failing to order that plaintiff's physical therapy begin immediately after he returned from an appointment at Marshfield Clinic on December 5, 2016. He also contends that even though he informed defendants Barker and Lundmark on December 13, 2016 that he had not yet received physical therapy, they failed to intervene and insure that he received treatment.

Plaintiff has not presented any evidence showing that defendants Bentley, Barker or Lundmark had any reason to believe that he was supposed to start physical therapy immediately. At plaintiff's December 5, 2016 appointment, the physical therapist, Sara Meyer, noted only that plaintiff should do range of motion exercises three times a day on his own and follow up with physical therapy at the prison. She made no statement in her orders about plaintiff needing to start the therapy immediately. Although Krizan apparently told plaintiff his physical therapy would start within two weeks, there is no evidence showing that this was medically necessary or that Bentley even knew about Krizan's statement to plaintiff. (Plaintiff has attached Department of Adult Institution Policy #500.30.50 to his brief in support of his motion for summary judgment, but he has not proposed any findings of fact related to the policy or discussed it in any detail in his brief. Further, even though the policy states that physical therapy "shall be provided immediately if required post-operatively," there is no evidence that this policy would apply in a case like plaintiff's in which physical therapy had not been ordered to start immediately. Dkt. #29, exh. #1.)

Plaintiff had his first physical therapy appointment on January 7, 2017, a little over a month after seeing Meyer at Marshfield Clinic. Jered Kuehn, plaintiff's physical therapist, has stated that waiting 33 days for physical therapy was appropriate in plaintiff's case. In fact, Kuehn avers that he would have recommended that plaintiff start physical therapy within 6 weeks (or 42 days) of surgery, but only if plaintiff had stiffness in his thumb and his own exercises were ineffective. Accordingly, plaintiff cannot show that defendant Bentley acted with deliberate indifference or negligence in not expediting his physical therapy. Plaintiff's proposed claims against defendants Barker and Lundmark fail for the same reasons. Accordingly, plaintiff may not proceed on any claim against Bentley, Barker or Lundmark under the Eighth Amendment or state negligence law.

ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by defendants Lehanaha Krizan, Renee Anderson, Reed Stuve and Judy Bentley, dkt. #38, is GRANTED and plaintiff Lorenzo Kyles's motion for summary judgment, dkt. #29, is DENIED.

2. Plaintiff is DENIED leave to proceed on his state law negligence claims against defendants Krizan and Anderson and all of his proposed claims against Bentley, Jamie Barker and Brad Lundmark.

3. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 10th day of August, 2018.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge